PARKS *vs.* PARKS and others.

Where a testator, who had three sons and two daughters, made his will sub-sequent to the revised statutes, and devised and bequeathed his real and personal estate in trust to permit his widow to enjoy the use of the rents and income thereof during her life or widowhood, subject to the payment of taxes, assessments, insurance, and the interest upon the incumbrances, and upon condition that his eldest daughter should live with her and be supported out of such rents and income ; and by the *second* and *third* clauses of the will the devisee in trust was directed, after the death or in-termarriage of the widow, to pay the rents of lot No. 26, after payment of taxes, assessments, and insurance, and keeping down interest on incum-brances, to his son P. for life ; and the rents and income of lot No. 30, to his son S. for life ; and by the *fourth* clause, he gave a similar beneficial interest in the rents and profits of lot No. 28, to his eldest daughter, who was the devisee in trust, and directed her to apply so much of the rents and profits of these lots respectively as could be spared conveniently to the payment of the principal of the incumbrances thereon, after the death or intermarriage of the widow ; and further directed that if either of those three of his children should marry and leave issue, the rent of his or her lot, instead of being paid to the parent, should be applied by the devisee in trust, for the support and education of such issue ; and by the *fifth* clause he further directed, that if either of the three died without leav-ing issue, the rents of that share should go to the survivor or survivors in equal portions ; but if either died leaving issue, the rent to go to such issue ; and by the *sixth* clause, he devised lot No. 51 to those three children in fee from and after the death or marriage of his widow, but upon condition that if either should sell his or her interest therein with-out the consent of the others, it should be forfeited to the others, and that the whole income of this lot should be applied to satisfy the incumbrances on lot No. 26, 28 and 30 ; and by the *seventh* clause, he devised to his young-est daughter, after the death or marriage of the widow, another of his lots free from the control of her husband, the rents to be paid to her on her sepa-rate receipt ; and by the *eighth* clause, he devised to his son D., after the death or marriage of the widow, lot No. 32 for life with remainder in fee to his heirs, subject to the incumbrance thereon ; and by the *ninth* clause, he devised lot No. 5 to his eldest daughter in fee, with the furniture and fix-tures, &c., from and after the death or marriage of the widow ; and by the *tenth* clause, he declared and directed that if either of his children should die without leaving issue, the share or portion of his estate, which by his will was given to such child, should go to the survivors, but if either died leav-ing issue, such issue should take the share of the parent ; and by the

eleventh clause, he devised and bequeathed the residue of his estate to all his children in fee, and appointed his eldest daughter trustee for all and every of the purposes of his will :

*Held*, that the general intention of the testator, as indicated by his will, was to give to his wife the rents and income of his estate during her life or widowhood, subject to the charges for assessments, &c., and to the charge of the support of his eldest daughter if she continued to reside with her mother; and after the death or re-marriage of the widow, to give to his five children in severalty the use or income of specific portions of the same property for life, subject to the charges and incumbrances upon their several lots or portions; and with remainder in fee, in the same specific portions of the estate, to the issue of the same children who had the life estates in their respective shares; and that if either of the five children died without leaving issue, his or her share or portion of the estate should go to the survivors in fee. And that this general intention of the testator might be carried into effect, either by giving legal estates to the objects of his bounty to the extent of their beneficial interests in their several portions of the property, or through the medium of a trustee to receive the income and apply it to their use, without suspending the power of alienation of any portion of the property for a longer period than is allowed by the revised statutes.

*Held also*, that the interest of the widow in the income of the property, during her life or widowhood, being entirely distinct from the subsequent interests therein which were given to the children and their issue respectively, the devise or bequest to her was valid, whether the legal estate was vested in her, or was in the eldest daughter as trustee, to receive the income for her use and benefit ; even if the limitations of the subsequent interests in different portions of the same property were not authorized by law. But that under the provisions of the revised statutes the legal title to the real estate, was in the widow, during her life or widowhood, and not in the eldest daughter as the trustee for her.

*Held also*, that the devise of the lots No. 26 and 30 as contained in the second and third clauses of the will created valid trusts of the legal estate during the lives of the testator's sons P. and S. under the provisions of the revised statutes; and that the trust to apply the rents and profits to keep down the interest and to reduce the principal of the incumbrances on those lots was also valid.

*Held also*, that the three children only took an estate for their respective lives, in lot No. 51, under the sixth clause of the will, in connection with the general clause limiting the shares of the several children over to their issue or to the survivors of such as should die without leaving issue ; and that the other son and the two daughters took also vested interests for life in their several lots, under the fourth, seventh, eighth and ninth clauses of the will, subject to the life interest of the widow therein; and that the testator's eldest daughter and his son D. took the legal title in their several lots to the extent of their beneficial interests therein. But whether the youngest daughter took a legal estate in her lot, or only an interest in the income thereof, as a trust estate; *Quære ?*

*Held further*, that none of the issue of the children would take any interest in the shares of their parents, after the termination of their lives, as an interest in a trust estate ; but that the interest to which such issue would be entitled, under the tenth clause of the will, were remainders in fee of the legal estate, in the portions of the parents respectively.

Whether the direction, in the *fourth* clause of the will, in case of the marriage of either of those children and the birth of issue, to substitute such issue in the place of the parent during his or her natural life is valid ; *Quære ?*

Whether the restriction, in the *sixth* clause of the will, as to the alienation by either of the three children of their interest in lot No. 51 without the consent of the others is valid ; *Quære ?*

Where the intention of a testator, in a testamentary disposition of his property, can be ascertained by an examination of the will itself and is not inconsistent with the rules of law, such intention will not be defeated, although from ignorance, and want of proper legal advice, he has not used the usual technical language in declaring such intent, or has misapplied legal terms.

In the construction of written instruments creating or conveying estates or interests in property, it is the duty of the courts to carry into effect the intent of the parties executing such instruments, so far as it can be collected from the whole of the instrument, and is consistent with the rules of law.

Where a will contains distinct and independent provisions, devising different portions of the testator's property, or distinct estates or interests in the same portions of the property, some of which provisions are consistent and others inconsistent with the rules of law, the former will be permitted to stand, although the latter are declared to be illegal and void ; unless the different provisions are so dependant on each other that they cannot be separated. And where real estate is conveyed upon two or more trusts, some of which are legal, and the others are void, or unauthorized by law, the legal estate will pass to the trustee, so far as is necessary for the purposes of the authorized trusts ; notwithstanding the provision of the revised statutes which declares that where an express trust shall be created for any purpose not authorized by law no estate shall vest in the trustees.

Full effect should be given to the particular intent, as well as to the general intent of the testator, so far as his particular intent can be ascertained by the will, and as is consistent with the rules of law and with his general intent ; which general intent must control in the construction of a will.

Upon a bill filed by a party interested in an estate, for the construction of the will of the testator, and to settle the rights of the complainant under the same, if there is a particular clause in the will in the construction of which the complainant has no interest, and where some who are to be affected by the construction of that clause are not in existence, or are not before the court as parties, and their rights if any depend upon a contingency which may never happen, the court will not settle the construction of that clause ex parte, when the only parties interested therein who are before the court do not ask for a decision of the questions which may arise upon that clause of the will.

Where real estate is devised to a trustee, upon a valid trust, during the continuance of two lives in being at the death of the testator, with a further limitation in trust which would have the effect, if executed as a trust, to suspend the power of alienation beyond the time allowed by law, the last limitation as a trust is void, and the estate of the trustee will cease when the valid trusts shall have been executed. And as the particular intent of the testator, in continuing the estate in the trustee for a longer period, cannot take effect, the legal title must thereafter vest in the cestui que trust if consistent with the general intention of the testator in relation to the disposition of his property; or if it cannot so vest consistently with his intention, it will belong to the heirs at law of the testator, or to other devisees under the will.

When all the valid purposes for which an express trust is created by will, in real property, cease or have been accomplished, the estate of the trustee in such property ceases; and every other estate or interest in the property vests in the heirs at law of the testator, or in his devisees, who have the beneficial interest therein, as a legal estate.

Where there are inconsistent clauses in a will, which cannot be reconciled with each other, effect will be given to the last clause as the final determination of the testator; unless his intention, as apparent from other parts of the will, requires a different construction.

April 6.  THIS was an appeal, by the defendants, from a decree of the vice chancellor of the first circuit, declaring all the provisions of the will of Peter Parks deceased in relation to his real estate inoperative and void, and that the whole of such real estate had descended to the heirs at law of the testator; who were entitled to hold the same as if no will had been made by him.

The testator died in 1835, seized in fee of several houses and lots in the city of New-York, one leasehold lot and some personal property; leaving a widow, Elizabeth Parks, three sons David, Peter, and Samuel, and two daughters Sarah, and Hannah the wife of P. P. Lyon, his only children and heirs at law. By his will, which was executed a few months previous to his death, the decedent by a general clause devised all his real and personal estate to his daughter Sarah in fee, for and upon the uses, trusts, intents and purposes in the will mentioned. He then proceeded to dispose of the beneficial interest in the property, to his wife and children, by various other clauses of the will. Some of those clauses contained either nominal or actual dispositions of the beneficial interest, in the form of trusts;

and in others the beneficial interest purported to be devised directly to the person for whose benefit the devise was made.

By the first of those clauses, which was in form a trust, the devise was declared to be *in trust* to permit the testator's wife to enjoy the rents and income arising from his real and personal estate, during her life or widowhood, for her sole use and benefit ; subject to the payment of taxes; assessments, and insurance upon the property and the interest upon the incumbrances on such property. Which disposition in favor of his wife was declared to be in lieu of dower and thirds in his real and personal estate, and upon the condition that his wife and his daughter Sarah should live together at the place where the testator resided at the time of making his will ; and that his said daughter should receive her support out of such rents and income during the life or widowhood of her mother. The *second* clause directed the devisee in trust, from and after the death of the widow, to pay the rents of the house and lot No. 26 Oliver street, after paying taxes, assessments, and insurance and keeping down the interest on the incumbrance on that lot, to the testator's son Peter, for life. The *third* clause contained a similar disposition of the rents and income of the house and lot No. 30 Oliver street in favor of his son Samuel, for life. And the *fourth* clause gave a similar beneficial interest for life to the devisee in trust, in the rents and income of the house and lot No. 28 Oliver street, for her own use. She was also directed, after the death or marriage of the widow, to apply so much of the rent and income of these three lots respectively as could be spared conveniently, to the payment of the principal of the incumbrances on those lots, until the whole were extinguished. And if either of those children should marry and have issue, the rent and income of his or her lot, instead of being paid to the parent, was to be applied by the trustee for the support and education of such issue. By the *fifth* clause, if either of the three died without leaving issue, the rents and income of his or her share of the property was

to go to the survivor or survivors, in equal proportions. But if either died leaving issue, his or her share of such rent and income was to go to such issue; and the trustee was directed to pay the same over for the benefit of such issue in equal proportions. By the *sixth* clause the rent arising from the testator's leasehold lot, No. 13 Forsyth street, was given immediately to his daughter Sarah; charged with the trust to apply so much thereof as might be necessary to the support and maintenance of a grandson of the testator, so long as he should be permitted to reside with her.

By several other clauses in the will, neither of which in terms professed to create a trust, the testator disposed of other parts of his real estate after the death or marriage of his wife, as follows : *First;* he gave and devised unto his sons Peter and Samuel and his daughter Sarah, from and immediately after the death or marriage of the widow, the house and lot No. 51 Madison street, in fee ; but upon the express condition that neither of the devisees should sell, assign, transfer, or mortgage his or her share thereof without the consent in writing of the others, and if either of them did so, his or her share should go to the others ; limiting the restriction, however, to the immediate devisees only.    And he directed his said daughter to receive the rents and profits of the whole of this lot, and to apply the same, after paying taxes, insurance, and assessments, to satisfy the incumbrances on the lots No. 26, 28, and 30 Oliver street, and after such incumbrances were paid, to divide the rent and income equally between herself and her said two brothers. *Secondly;* he gave and devised unto his daughter Hannah Lyon, from and immediately after the death or marriage of the widow, the house and lot on the corner of Norfolk and Hester streets, in fee ; without being subject to the control of her present or any future husband, or liable for his debts.    And he directed that her separate receipt, for the rents and profits, should be a sufficient discharge therefor. *Thirdly;* he gave and devised unto his son David, the complainant, from and immediate-

ly after the death or marriage of the widow, the house and lot No. 32 Oliver street, for and during his natural life, with remainder in fee to his heirs ; subject to the payment of the mortgage which was upon that lot, by him or his heirs. And *fourthly;* he gave and devised to his daughter Sarah, from and immediately after the death or marriage of the widow, the house and lot No. 5 Forsyth street, in fee, together with the furniture, beds and bedding, plate, jewelry, and fixtures therein. But in a subsequent clause of his will the testator declared and directed that in case either of his children should die without leaving lawful issue, the share or proportion of his real and personal estate which by his will was given to the child so dying should go to and belong to the survivor or survivors of his said children ; but if either of his children so dying should leave issue such issue should take the share of the parent so dying. He then devised and bequeathed all the *residue and remainder* of his real and personal estate, to his children and to their heirs and assigns forever, in equal proportions. And after appointing his daughter Sarah executrix and two other persons executors of the will, he added a further clause appointing and declaring his said daughter to be trustee for all and every of the purposes of his will.

*J. Loveridge & J. Anthon,* for the appellants. The actual estates created, or purported to be created, by the will, are so created by the devise to Sarah in fee upon trusts, which form life estates only, and by the seventh and eighth items, which carry the fee ultimately. The estates which seem to be so created are as follows : Lot No. 26 Oliver street ; 1. For life in the widow ; 2. Remainder for life to son Peter ; 3. Remainder in fee to his children, if any at the time of his death ; if not, then 4. Remainder in fee to surviving children of testator.—30 Oliver street ; the same, substituting his son Samuel.—28 Oliver street ; the same, substituting daughter Sarah.—13 Forsyth street ; 1. For life in widow ; 2. Remainder for life to grandson, P. Parks ; 3. Remainder in fee to testator's children.—

51 Madison street; 1. For life in the widow; 2. Remainder in fee to Peter, Samuel, and Sarah; 3. Remainder, if either die without issue, to the survivors.—Corner of Norfolk and Hester streets; 1. For life in the widow; 2. Remainder in fee to Hannah Lyon; 3. Remainder to surviving children.—32 Oliver street; 1. For life in the widow; 2. Remainder for life to David Parks; 3. Remainder to his heirs.—3 Forsyth street; 1. For life in the widow; 2. Remainder in fee to Sarah; 3. Remainder to testator's surviving children, if she dies without issue. The trust to permit the wife to enjoy the rents and profits of all the real and personal estate, &c. during her natural life, being a mere naked trust, is turned, by the operation of the statute, into a legal estate of like quantity and duration in the wife. (1 *R. S.* 727, § 47.) The trusts to receive the rents and profits of numbers 26, 30, and 28 Oliver street, and 13 Forsyth street, and pay them over to the children mentioned in the several devises of these premises, are valid trusts. (1 *R. S.* 728, § 55, subd. 3. *Nelson, Ch. J., Hawley* v. *James,* 16 *Wend.* 118.) The absolute devises in fee of the premises 51 Madison street, 32 Oliver street, 3 Forsyth street, and Norfolk and Hester streets, control the devise in fee to the trustee, and are valid. When properly considered, the power of alienation is not suspended for more than two lives in any part of the property devised.

*J. A. Morrill & J. W. Gerard,* for the respondent. Peter Parks, deceased, made his will 4th of February, 1835, leaving his widow, Elizabeth, two daughters, Sarah Parks and Mrs. Hannah Lyon, three sons, David, Peter, and Samuel, and Peter a grandson, son of one of them. He gives the whole estate to his daughter Sarah in trust; to his widow he gives a life estate in the whole property. He left seven houses, giving Sarah, however, two. On the death or marriage of his widow he gives life estates to his five children and his grandson in separate houses, (giving two houses, however, to his daughter Sarah,) and in one

house he gives to three of his children life estates. On the death of any of his children without issue, he gives the fee to the survivors; and on the death of any of them with issue, to such issue in fee. And it is manifest, that as to the six houses, (three given by the first division of the will to the three children, and three by the last to the other children,) there is the right of survivorship in each house among three lives, after the widow's life estate is spent, if his children should have no children. In both these great devises of the will, it is a manifest possible tying up of the right of alienation for more than two lives in being at the death of the testator; which is against the provisions of the revised statutes. In each devise, besides the widow's life estate, there are three life estates, among which there is the right of survivorship in fee in each house, in case the children leave no children; and the fee may not vest in the third surviving child until after the death of the widow, and of two of the children, the two dying without issue. In which event such surviving child will not take until after the expiration of three life estates. Within the statute there can only be the right of survivorship among two life estates, besides the life estate of the widow; so as to make the fee vest in the third life estate instanter on the termination of the two lives allowed by the statute. If the last surviving child alone should have issue to take the whole fee in the three houses, such issue will not take until after the termination of four life estates, viz. the estates of the widow and the three children. Supposing the trusts to be valid within the third subdivision of the 53d section of the chapter on trusts, by these trusts the power of alienation is possibly suspended for more than two lives. It is possible that for more than two lives, persons in esse cannot be designated who will be entitled to the ultimate fee. (14 *Wendell*, 303, 304, 310, 312, 319. *Id.* 299. 16 *Wendell*, 139, 140, 164, 165. 1 *R. S. 1st ed. p.* 723, §§ 14, 15, 36. *James' will*, 16 *Wendell*, 61. *Clendenning's will*, 8 *Paige*, 308.) The disposition of the house 51 Madison street is a clear possible, if not a

positive, suspension of the power of alienation for three lives, viz. of the widow, and two of the children. It is the same as if the testator had limited the survivorship to the three, vesting the whole fee in the last survivor, which is, of course, within the prohibition of the statute. The children have not the power to sell the trust. The mere possibility, that the alienation may be suspended for more than two lives, avoids the devises. (*James' will*, 16 *Wendell*, 63, 64, 65, 68, 120, 121, 125, 126, 133, 175.) The remainder over to the surviving children or child, on the death of a child or children without issue, or to the issue, if any living at the death of such child, are contingent remainders. (14 *Wendell*, 310. 1 *R. S. 2d ed.*, 718, § 13.) The remainders are void, because they are contingent, and depend upon the limitation of the trust term, which being too remote, the contingent remainders limited on it are also, by necessary consequence, too remote. (14 *Wendell*, 310 to 312, 319, 320, 327. *As to power in trust*, 14 *Wendell*, 323. *James' will*, 16 *Wendell*, 69, 139, 140, 141.) The trusts, however, are not valid within the third subdivision of the 53d section of the revised statutes on trusts ; they not being to apply the rents and profits to the use of the beneficiaries, and the beneficiaries themselves not being such as are contemplated within the statutes. And, in addition, the trustee is also a cestui que trust. (*See opinions of Young and Maison*, (*Senators*,) *and Nelson*, *Ch. J.*, *in Lorillard's will*, 14 *Wendell*, 320 to 323. *James' will*, *Bronson*, *J.*, 16 *Wendell*, 156, 159, 160.) The trustee having one entire estate, if part of the trusts are bad, being against the statute, the whole are vitiated ; and, because the general intent of the testator being broken up, no particular intent connected with it will be allowed to stand. (*Lorillard's will*, 14 *Wendell*, 342. *Idem*, 351. *James' will*, 16 *Wendell*, 169.)

THE CHANCELLOR. It is very evident that the testator in this case, or the scrivener who drew the will if it was not drawn by the decedent himself, had no clear concep-

tion of the difference between a use and a trust in real estate ; or what words were necessary to create a trust estate, as contradistinguished from a legal interest in lands, or in the rents and profits thereof. And he must have had still less knowledge of the legal meaning of some of the technical expressions which are used in different parts of this will. Hence there is a strange confounding of common place expressions and of technical legal terms, in the various and complicated provisions of the will. And some of those provisions, upon a cursory view of them, are apparently in direct conflict with other provisions contained in the same instrument.

But the intention of a testator, as to the disposition of his property by will, is not to be defeated, where such intention can be ascertained upon a careful examination of the whole will, and the intention is not inconsistent with the rules of law ; although from ignorance and the want of proper legal advice he may not have used the usual technical language in declaring such intent ; or because he or his scrivener may have misapplied the words use and trust, and other legal terms. This was the rule of the common law in the construction of wills. And the revised statutes declare, that in the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties ; so far as such intent can be collected from the whole instrument and is consistent with the rules of law. (1 *R. S.* 748, § 2.) It is also a well settled principle of law that where a will contains distinct and independent provisions, devising different portions of the testator's property, or distinct estates or interests in the same portions of the property, some of which provisions are consistent and others inconsistent with the rules of law, the former will be permitted to stand, although the latter are declared to be illegal and void ; except where they are so dependent on each other that they cannot be separated. And in the recent case of *Darling* v. *Rogers and Sagory,* (22

*Wend. Rep.* 483,) it has been settled by the court of dernier resort, that where real estate is awarded upon two or more trusts, some of which are legal and the others are void or unauthorized by law, the title passes to the trustee so far as is necessary for the purposes of the authorized trusts; notwithstanding the provision of the revised statutes which declares that where an express trust shall be created for any purpose not authorized by those statutes no estate shall vest in the trustee. (1 *R. S.* 729, § 58.)

Applying these principles to the case under consideration, I think all or nearly all of the provisions of this will can be sustained, consistently with the rules of law, and with the particular as well as the general intentions of the testator; so far as those intentions can be ascertained from a careful examination of every thing contained within the four corners of his will.

The general intention of the testator appears to have been, to give to his wife the rents and income of the bulk of his estate, during her life or widowhood, subject to the taxes, assessments, expenses of insurance, and the keeping down of the interest on incumbrances in the meantime; and to the charge of the support of his daughter Sarah, who was unmarried, and who was expected to live with her mother in the family mansion; and after the death or re-marriage of the widow, to give to his five children in severalty the use and income of specific portions of the same property, for life, subject to the taxes, assessments, expenses of insurance, and to the incumbrances upon their respective lots or portions of the estate; with remainders in fee in the same specific portions of the property to the issue of the children respectively who had taken the life estates therein; and that if any such child died without issue, his or her specific portion of the property should go to the surviving brothers and sisters in fee.

To carry into effect this general intent of the testator, no trust was necessary. Nor could this general intention of the testator, whether carried into effect by giving legal

estates to all the objects of his bounty, or by giving to the widow and children the rent and income of the property through the medium of a trustee, suspend the power of alienation of any portion of the property for a longer time than during the continuance of two lives in being at the death of the testator. In the first case, the power of alienation of each separate share or portion of the property would only be suspended during the life of the child of the testator to whom the remainder for life was limited. For upon his or her death, even during the life of the widow, the remainder in fee, either in the issue or in the surviving brothers and sisters, would become immediately vested in interest; so that such ultimate remaindermen, by joining with the widow, could at once convey an absolute fee to the purchaser in that portion of the estate. And in respect to every other portion of the estate it would only remain inalienable during the continuance of the life of the child upon whose death the ultimate remainder in fee was limited to vest in interest. In the second case, the trust to receive the rents and profits and pay them over to the widow during her life or widowhood, and then to the specified child for life, could only suspend the power of alienation in each separate portion of the estate for the lives of the widow and the child; under the sixty-third section of the article of the revised statutes relative to uses and trusts. For the ultimate remainder in fee must necessarily vest in possession, as well as in interest, at the termination of those two lives, in being at the death of the testator.

This will also shows that the testator, in addition to this general intention to give the income of his property to his wife during her life or widowhood, and to give his children life estates in distinct portions of it afterwards, thought proper to place the life estates of some of his children, in their portions of the property, under the power and control of a trustee for their use; and to secure the appropriation of a part of the income, which might not be needed for their support and maintenance, to the extinguishment of the incumbrances which were charged on that part of the es-

**1841.**

Parks
v.
Parks.

tate.   Hence we find him using different language in reference to the several portions of the estate appropriated to the use of his different children, after the death or marriage of the widow.   It is necessary therefore to give full effect to these special intentions of the testator, so far as they can be ascertained by the will and are consistent with the rules of law, as well as to his general intention as to the disposition of his property after his death.   The rule of construction, in such cases, is to give effect to the whole of the language of the testator in expressing his particular intent, provided it is not inconsistent with the general intention ; which latter intention must control in the construction of the will.   (*Constantine* v. *Constantine*, 6 *Ves. Rep.* 99.   1 *Rob. on Wills*, 3 *Lond. ed.* 356.   *Dawes* v. *Swan*, 4 *Mass. Rep.* 208.)

The intention of the testator to give to his wife a beneficial interest in all the income of his estate, subject to certain specified charges thereon, during her life or widowhood, except in the rents of the leasehold premises No. 13 Forsyth street, is perfectly apparent.   And as the estate or interest thus devised to the wife is entirely separate and distinct, from the subsequent estates and interests in the same premises, limited thereon in favor of the children and their issue, I think there is no reason to doubt that the devise to her is valid ; whether she takes the legal estate in the premises under the devise, or such legal estate is vested in the daughter, as her trustee, to receive the rents and profits and pay them over to her.   Whether it is the one or the other is a question with which the complainant has no concern.   For in neither case can he claim the possession of the property or any part of the rents and profits or income of the estate during her life or widowhood.   Although there is a general devise of all the testator's property to his daughter Sarah upon the *uses* and *trusts* therein mentioned, the direction to *permit* the widow to enjoy the rents and income of the estate, for her sole use, might probably have given the legal estate to the mother as an executed use previous to the adoption of the revised statutes.

(*Broughton* v. *Langley*, 2 *Ld. Raym. Rep.* 873. 2 *Taunt. Rep.* 109.) But the question is placed beyond a doubt by the 47th and 49th sections of the article of the revised statutes relative to uses and trusts, (1 *R. S.* 727.) These sections prohibit the vesting of any estate in the trustee in trusts which are merely nominal; and turn the interest of the cestui que trust into a legal estate, of the same quality and duration, and subject to the same conditions as his beneficial interest in the property.

It does not appear by the will, or by the pleadings, what was the extent of the testator's interest in the leasehold premises No. 13 Forsyth street. Although the devise to the widow was broad enough to cover this property, I am satisfied the testator intended to exclude it from that devise, and to convey an immediate beneficial interest therein to his daughter Sarah; subject to the charge of providing for the support and maintenance of her nephew out of the rents and profits, so long as he should be permitted to reside with her. And as the devise of the rents and profits to her was general, and not limited to her life merely, she would have taken the whole of the testator's estate and interest in that property, whatever it was, under the provision of the revised statutes on that subject, (1 *R. S.* 748, § 1,) if such devise had not been controlled by the subsequent clause of the will in relation to the duration of the estates or interests of the testator's children in their respective portions of the property.

The testator, for some reason which is not explained in his will, thought proper, instead of giving to his sons Peter and Samuel the full control of their respective life interests in the two houses and lots No. 26 and 30 Oliver street, to give them the beneficial interest therein, through their sister as a trustee. That was a trust clearly authorized by the revised statutes, as to the interest of each, according to the decision in the case of *Gott* v. *Cook*, (7 *Paige's Rep.* 521;) although, in the case of Peter, she was authorized to pay over the rents and profits when received, and was not in terms directed to apply them to his use;

as by a subsequent clause of the will she was directed to do in relation to the rent and income of the lot, the beneficial interest in which belonged to Peter.

The revised statutes also have authorized the creation of an express trust to lease lands for the purpose of satisfying a charge thereon. The authority of the trustee, therefore, to pay the interest of the incumbrances out of the rents and profits of these lots in the first place, and to apply so much of those rents and profits as might be spared from the support of the cestuis que trust, to reduce the principal of the incumbrance on their respective lots, was therefore valid ; and should be carried into effect, according to the intention of the testator. I have some doubt as to the validity of the direction to substitute the issue of the sons, if they should have any, as the persons beneficially interested in these rents and profits during the life of the sons. It appears to be an attempt to create a succeeding estate for the residue of the life of the parent in favor of persons not in esse at the death of the testator ; contrary to the prohibition of the statute against limiting successive life estates except to persons in being at the creation thereof. (1 R. S. 723, § 17.) If this provision of the will is absolutely void, it leaves the previous devise of the rents and profits, to the sons for life, unimpaired. (*Ring* v. *Hardwick*, 4 *Lond. Jurist*, 242.) And their issue, if they have any, will come in as the ultimate remaindermen in fee ; under the general provision contained in the seventh clause of the will, giving the share of each child, after the termination of his or her life estate therein, to his issue in fee. Under that clause of the will the issue take the ultimate remainder in fee as a legal estate, and not as a devise in trust. The question, then, as to these substituted remainders in favor of the issue, if there should be any, which the testator has attempted to carve out of the life estates which he had previously devised to Peter and Samuel and Sarah respectively, is one which can only arise between them and their issue. And as it does not appear that either of those children have any issue, the question may never arise. The

decree in this case, therefore, ought not to attempt to settle that question ex parte ; especially when the only parties now before the court who can ever be interested in the decision thereof, do not ask the court to determine the extent of their rights under this part of the will, as against an unborn generation. As there is nothing in that clause of the will which suspends the power of alienation beyond two lives in being at the death of the testator, the devise of the life estate in each lot is valid.

In the limitation over of the ultimate remainders to the issue, in each of these lots, the testator, in the clause of the will which is called the *fifth* trust clause, appears to have intended that the issue, or the survivors of the deceased child if he or she should die without issue, should take the rents and profits through the medium of a trust ; as the trustee is directed to pay over such rents and profits, which necessarily implies that she should continue to hold the legal estate as the trustee, to enable her to receive such rents and profits for distribution. Such a trust would be invalid, as the effect of it might be to render the estate inalienable for a longer time than during the continuance of two lives in being at the death of the testator; under the 63d section of the article of the revised statutes relative to uses and trusts. The particular intention of the testator in this respect must therefore fail. But his general intention, as expressed in the subsequent clause of his will, must still have the effect to carry the rents and profits to the issue, after the termination of the life estate of the parent, as a legal estate in remainder in fee in that portion of the property. And if the devisee for life should die without leaving issue, the remainder in fee will go to all the surviving children of the testator, as tenants in common, under this subsequent clause of the will; instead of going to the survivors of Peter and Samuel and Sarah only, under the void trust clause. To that extent, if either of the three should die without leaving issue in the lifetime of the complainant, he will be benefitted by having the fifth trust clause of the will declared inoperative and void. The limitation of

this illegal trust in favor of the remaindermen cannot, how-- ever, affect the previous devise of the life estates in these several lots in favor of those three children respectively ; although as to the lots of the two sons the trustee holds the legal estate in trust during the continuance of their respective lives, as a valid trust. For when all the valid purposes for which an express trust is created by will in real property cease, or have been accomplished, the estate of the trustee ceases. (1 *R. S.* 730, § 67.) And every other estate or interest in the premises vests in the devisees who have a beneficial interest therein, or in the heirs at law of the testator by whom such express trust is created, as a legal estate. (*Idem.* 729, § 62.)

The clause of the will disposing of the house and lot No. 51 Madison street, to three of the testator's children, after the death or intermarriage of the widow, purports to convey it to them in fee as tenants in common ; subject to the charge upon the rents and profits for the extinguishment of the incumbrances upon the three lots on Oliver street. But this devise is necessarily controlled by the subsequent clause, which restricts every devise of the testator, to a child, to a life estate therein. For the rule in relation to the construction of wills, where there are inconsistent clauses which cannot be reconciled with each other, is to give effect to the last clause as the final determination of the testator ; unless the intention of the testator, as apparent from other parts of the will, requires a different construction. (*Per Parsons, Ch. J.* 4 *Mass. Rep.* 215. *Covenhoven* v. *Shuler,* 2 *Paige's Rep.* 123. *Constantine* v. *Constantine,* 6 *Ves. Rep.* 100.) I admit this rule is not founded upon a very satisfactory reason, and is only to be adopted from the necessity of the case. Here, however, the restriction of the interests of the testator's children to life estates only, in their several portions of the property, appears to be most consistent with the general intention of the testator ; so far as his intention can be ascertained from the whole will. It is not necessary to express any opinion upon the question whether the testator had or had not

the power to prohibit either of the devisees from selling, his or her life interest in the undivided third of that lot, without the written consent of the co-tenants; as the power of alienation is not thereby suspended beyond the period allowed by law. (*See Baker* v. *Newton,* 2 *Beavan's Rep.* 112.) The restriction is in terms confined to the three children; so that upon the death of either, his or her undivided share of the property may be immediately sold by the ultimate remaindermen in fee, to whom that share will then absolutely belong. The power of conveying a perfect fee in each share is necessarily suspended during the life of the devisee for life; because the ultimate remaindermen, who are to take the contingent fee, cannot be ascertained until his or her death. And the power to alien the life estate of the sons in their respective shares is probably restricted by law for the same period, if their sister takes the legal interest in those shares, as trustee to receive the rents and profits for their use; as I think she does by implication.

The devise of the house and lot to Mrs. Lyon, after the death or marriage of the widow, is one in which by the common law either her sister or her husband might be deemed a trustee by implication, to secure to her the separate use of the property during coverture. (*Harton* v. *Harton,* 7 *Term. Rep.* 652. *Bennet* v. *Davis,* 2 *Peere Wms.* 316.) But under the provisions of the 47th section of the article of the revised statutes relative to uses and trusts, it is turned into a legal estate in the person beneficially interested; unless by the terms of this devise it can fairly be inferred that the testator intended his daughter Sarah should receive the rents and profits and pay them over to her sister for life. That is a question which does not arise between the parties to this appeal; as Mrs. Lyon and her husband are not before the court in a situation to contest that question between themselves. And they alone appear to have any interest in it. For there can be no doubt as to the validity of the devise, whether the devisee takes the legal estate, as a remainderman for life, or a mere equitable

right to the rent and income of the premises, for the same period, through the medium of her sister as a trustee to lease the premises and receive and pay over the rents and profits to her, or to apply them to her seperate use. But for the reasons before stated, Mrs. Lyon only takes a life estate in this lot, under the particular clause of the will in which the devise for her separate use is found; unless she should survive all her brothers and her sister and die without issue. And the ultimate remainder in fee, after her death, will vest in her issue, if she leaves any; or in default of such issue, in her surviving brothers and sister, under the subsequent general clause of the will on that subject.

Under the next clause of the will, the complainant takes a vested remainder for life in the house and lot No. 32 Oliver street, after the death or remarriage of the widow, as a legal and not as a trust estate; subject to the charge thereon. And the ultimate remainder in fee in that part of the property, after his death, will vest in his issue, or in his surviving brothers and sisters, under the subsequent general clause; notwithstanding the particular limitation over of such ultimate remainder in this previous clause, which is inconsistent with the general clause. But if he should die without leaving issue, after the death of all his brothers and sisters, the ultimate remainder in fee will vest in those who shall then be his heirs at law; according to the special limitation to his heirs general, contained in the previous clause, under the provision of the revised statutes on that subject. (1 R. S. 725, § 28.)

Sarah takes an estate for life as a legal estate in the house and lot No. 5 Forsyth street, and in the furniture, &c. therein, under the next clause of the will, after the death or marriage of the widow. And the ultimate remainder in fee in the same property, if she survives all her brothers and her sister and dies without leaving issue. But for the reasons before stated, the ultimate remainder in fee in that property will vest in her issue if she leaves any, or in default of such issue, in her surviving brothers and sister,

according to the directions contained in the subsequent general clause of the will on that subject.

And if the testator left any other real or personal property, or if there is any contingent estate or interest, in any of the houses and lots mentioned and described in the will, which is not legally and effectually disposed of by some of the previous clauses, such property, estates, and interests, after the death or marriage of the widow, belong to the five children of the testator absolutely, as legal estates and interests; under the general residuary clause of the will.

The decree appealed from must be reversed; and a decree must be entered declaring the construction of the will and the rights of the parties under the same to be as above stated. As the complainant has failed as to every substantial part of his claim, I should have charged him personally with the costs to which the defendants have been subjected by this litigation, if the testator had not furnished some grounds for litigation by the inartificial and perplexing provisions of his will. Upon that ground alone I shall not charge the complainant with the costs of the defendants either in the court below or on this appeal. But I shall leave each party to pay their own costs in both courts; unless the executrix has personal estate in her hands not specifically bequeathed by the will otherwise than in the residuary clause thereof. In that case she is to be permitted to retain her own costs and the costs of her co-defendants out of such personal estate; and must also pay the complainant's costs out of the same if there is sufficient for that purpose.(*a*)

---

(*a*) The decree of the chancellor in this case was affirmed, upon appeal to the court for the correction of errors, in December, 1842.