MATILDA OXLEY, Respondent, *v.* HIRAM C. LANE and others, Appellants.

Where effect cannot be given to the entire will, or to an entire portion thereof, consistent with the rules of law applicable thereto, any part may be sustained which is conformable to such rules, provided it can be separated from the other parts, without doing violence to the testator's general intention.

Where the primary disposition of the estate is in accordance with the rules of law, ulterior limitations, by which the testator seeks to work an illegal suspension, being void, may be disregarded, as not affecting the validity of the primary dispositions.

ACTION in the Supreme Court to obtain a judicial construction of the last will of Daniel Lane, deceased. The will, which was executed on the 14th of September, 1861, first directed the executors to pay the testator's debts and funeral charges, and then proceeded as follows:

"2d. I give and bequeath unto my wife, Rosetta, the use of my homestead and farm, including the Willetts place, together with all my household furniture, farming implements, and stock on the farm, until my youngest child becomes of the age of twenty-one years, in trust, to be used and occupied by my said wife, for a home for herself and for such of my children as may be minors at my decease, until they respectively become twenty-one years of age.

"3d. I give and bequeath to my daughters, Matilda and Caroline, each the sum of twenty-five hundred dollars, the use of the same to commence one year after my decease, and to be paid to them yearly thereafter by my executors, the payment of the principal to be forborne twenty-five years after my decease.

"4th. I give and bequeath to my daughters, Mary and Charlotte, the sum of twenty-five hundred dollars each, the use of the same to commence when they respectively become twenty-one years of age, and to be paid to them yearly thereafter by my executors, the payment of the principal to be forborne twenty-five years from my decease.

"5th. I give and bequeath to the children of my daughter Amelia, viz., Amelia Ann Raynor and Daniel W. Raynor, each the sum of twelve hundred and fifty dollars, the use of the same to commence when the said Amelia becomes twenty-one years of age, and to be paid to them yearly thereafter by my executors, the payment of the principal to be forborne until twenty-five years after my decease, and if either of them die without issue before the final distribution at the end of twenty-five years from my decease, then the survivors of them shall have the share of the one deceased.

" 6th. I give and bequeath to my wife Rosetta the use of twenty-five hundred dollars during her life, to be, at her option, accepted by her in lieu of dower, and if so accepted, to be paid to her yearly by my executors after my decease.

" 7th. I give, devise and bequeath to my sons, Hiram C., Charles N., William Henry and Emory, all the rest, residue and remainder of my real and personal estate, but subject to the bequests hereinbefore contained, to be divided equally between them, share and share alike, but the whole to be kept to accumulate until the youngest of them, or the youngest survivor of them, becomes of age, then the use of the personal estate to be paid to them yearly in equal shares thereafter by my executors, and the payment of the principal to be forborne for twenty-five years after my decease, the real estate to be entered on and used by them equally, after the youngest son or survivor becomes of age, but not to be divided, sold, aliened, or conveyed, until twenty-five years after my decease.

" 8th. I will, order, devise and bequeath, that if either of my said sons or daughters, or if both of my said grand-children, shall die without issue before the final distribution of my estate, at the end of twenty-five years after my decease as aforesaid, that the share of the party or parties so deceased shall be shared equally among all my other children, share and share alike, but subject to the same restrictions, and the use and principal to be paid by my executors to them at the same time and in the same manner as the bequests hereinbefore to them directly made."

The will then gave the custody of the minor children to the testator's wife, and appointed John Denham, of the city of New York, and John Wood, of Sayville, executors.

The testator died at Islip, in the county of Suffolk, on the 13th of January, 1862, owning real and personal estate valued at over fifty thousand dollars, and leaving the said Rosetta, his widow, and also the children and grandchildren named in said will, his only heirs and next of kin. One of the daughters is the plaintiff in this action, and the other children, the said grandchildren, the widow, and the executors, are the defendants. All the heirs were twenty-one years of age and upward, at the death of the testator, except two of the children, Mary and Charlotte Lane, and the two grandchildren, Amelia and Daniel Raynor. The widow declined to accept the bequest given to her in lieu of dower. The complaint alleged that the third, fourth, fifth, seventh and eighth clauses of the will create unlawful perpetuities, and are void by statute.

The executors answered, insisting that the provisions of the will are valid, except that those which forbid or postpone the payment of the legacies, or forbid the division, sale, alienation or conveyance of the real estate, contrary to the rights and interests of the legatees and devisees as given by the will, are repugnant and void.

The sons of the testator answered, claiming that the will does not suspend the power of alienation, and that no part of it conflicts with any provision of the Revised Statutes, except that part of the seventh clause which directs that the real estate is not to be divided, sold, aliened or conveyed until twenty-five years after the testator's death, which direction they claim is void, without affecting the devises of the real estate. They also claim that the clause providing for an accumulation during the minority of the sons is inoperative, by reason of the fact that each of the sons was an adult at the death of the testator.

The infant defendants appeared by guardians, and put in general answers.

The issues were tried at a Circuit Court in the county of Suffolk, by Justice LOTT, without a jury, who found the facts above stated, and decided, as matter of law, that the absolute power of alienation of the real estate intended to be devised by the second, seventh and eighth items, and the absolute ownership of the personal property intended to be given and bequeathed by the second, third, fourth, fifth, seventh and eighth items of the will, may be suspended for a longer period than is allowed by law, and that the devises and bequests in said items are void; and that the real and personal estate of the testator became vested in his heirs-at-law, widow and next of kin, immediately upon his death, subject to the provision and bequest made in the first and sixth items of the will.

A judgment was entered in conformity to that decision, from which the executors and the testator's sons appealed to the General Term. The judgment was there affirmed, except as it respects the second item of the will, giving the use of the property therein mentioned to the widow, in trust for herself and the minor children, as to which item the judgment was reversed, and it was adjudged that the widow take the use of the homestead farm including the Willett place, together with the household furniture, farming implements, and stock on said farm, as a home for herself and the minor children during the minority of each of them, the widow not to sell and dispose of that property when the children arrive at full age; and that, in the mean time, the estate in remainder therein vests with the residue of the estate.

From the judgment of the General Term, the executors and the sons of the testator appeal to this court. The cause is submitted on printed points.

*R. Jennings, Jr.,* for the plaintiff, respondent.

*Miller & Tuthill,* for the executors, defendants and appellants.

*W. P. Buffett,* for the testator's sons, defendants and appellants.

*W. Wickham,* for the infant defendants.

SMITH, J.   The main questions arising upon the will of the testator relate to the construction of the eighth item, and its effect upon the other parts of the will.   In order to determine those questions properly, it will be useful, first, to examine the preceding items, and ascertain their meaning, independently of the eighth item.

There is no question respecting the first item, it being merely a direction to the executors to pay the testator's debts and funeral charges.

By the second item, the testator gave to his wife the use of his homestead and farm, with all his household furniture, farming implements and stock on the farm, until his youngest child should become twenty-one years of age, to be used and occupied by his wife, for a home for herself and for such of his children as were minors at his death, until they respectively should become of age.

The question, whether the trust created by this item is valid as an express trust, is not before us.   The Special Term held the devises and bequests in the second item void; the General Term reversed the decision of the Special Term on that point, affirming it in all other respects, and held that the widow takes the use of the farm and other property disposed of by that item, as a home for herself and the minor children during the minority of each of them, and that, in the mean time, the remainder vests with the residue of the testator's estate.   The appeal to this court is from that part only of the judgment which affirms the judgment of the Special Term, and that alone can be reviewed.   Whatever opinion we might have entertained respecting the validity of the trust, were the question presented for our decision, we find its validity virtually conceded by the appellants, the only parties who, in our view of the case, have an interest adverse to the *cestuis que trust*, and we, therefore, assume that it is a trust authorized by law.

Upon this assumption, the whole estate in the trust property vested in the trustee, on the death of the testator (1 R. S., 729, § 60), and cannot be aliened by her, in contravention of the trust. (Id., § 66.)   At the time when the testator died,

only two of his children were minors. The trust is, therefore, limited by the minority of those two children. It was created for their benefit, its object being not to furnish a home for their mother, who was provided for in a subsequent item of the will, but to enable the children to live with her during their minority. It is apparent, therefore, that the trust is limited by the actual minorities of the children, and as the minority of either dying under age would, in fact, cease upon that event, the trust estate cannot extend beyond two lives, and the trust does not create an illegal suspension. On the other hand, as it may possibly continue during the lives of the two children, it exhausts the suspension allowed by law, and any further suspension in respect to the trust property would be illegal.

The third, fourth and fifth items may be considered together. The third item gave to each of the two adult daughters of the testator the sum of $2,500, the " use " (or interest) of the same to commence one year after the testator's death, and to be paid to said legatees yearly thereafter by his executors, the payment of the principal to be forborne twenty-five years after his death. The fourth item gave a like sum to each of his two minor daughters, the payment of the principal to be forborne the same period, and the use thereof to commence when they respectively should become of age. The fifth item gave to Amelia and Daniel Raynor, the children of a deceased daughter of the testator, each the sum of $1,250, payment of the principal to be forborne the same period, and the use thereof to commence when Amelia should become of age, and if either should die without issue, before the payment of the principal at the end of the twenty-five years, the survivor to have the share of the deceased. The legacies given by these several items vested in interest at the time of the death of the testator, although the time of payment was postponed. (16 N. Y., 402; 17 id., 561; 23 id., 317.) The legacies to each of the daughters vested absolutely; the legacies to each of the grandchildren also vested, subject to be divested upon the contingency that the legatee should die without issue, during the period of

twenty-five years after the death of the testator, and, in that event, to go to the survivor. This contingent qualification will necessarily cease with one life, so that the absolute ownership is not thereby suspended for an unlawful period. These several items, considered by themselves, are, therefore, valid.

The validity of the sixth item is not questioned. It made a provision for the wife in lieu of dower. As she has declined to accept it, the property thereby intended to be disposed of falls into the residuum of the estate.

The seventh item gave to the testator's four sons the remainder of his estate, real and personal, subject to the preceding bequests, to be divided equally between them, but the whole to be kept to accumulate until the youngest of them, or the youngest survivor of them, should become of age, then the use of the personal estate to be paid to them yearly in equal shares thereafter, by the executors, and the payment of the principal to be forborne for twenty-five years after the testator's death; the real estate to be entered on and used by them equally, after the youngest son or survivor should become of age, but not to be divided, sold, aliened or conveyed until twenty-five years after the death of the testator. It was found, on the trial, that, at the time of the testator's death, all of his sons were adults; the direction for an accumulation was, therefore, inoperative, and the devisees were entitled immediately to enter upon and take possession of the real estate. The devise to them of the real estate was a perfect devise in fee. The restrictions as to the division, sale and conveyance thereof are not in the operative terms of the devise, nor are they imposed as conditions precedent. They are simply intended as restrictions upon what had already been given, and they are inconsistent with the estate devised. It is well settled that, at common law, a perpetual and total restriction upon the power of alienation of an estate in fee simple is void, as repugnant to the estate, and its failure does not affect the validity of the grant or devise. (Litt., § 360; Co. Litt., 223, *a;* 4 Kent, 131; 2 Cai., 345; 4 Sim., 141; 1 Denio, 448; 2 Seld., 467, 492.) In the present case, however, the restrictions are not perpetual, but are limited to

twenty-five years after the death of the testator.   There are
cases where partial restrictions upon the power of alienation,
such as conditions not to sell to a particular person, or for a
particular time, have been held good, but doubts have been
expressed as to their correctness. (4 Kent, 131; *De Peyster*
v. *Michael*, 2 Seld., 467, *per* RUGGLES, Ch. J., 495.)   In
*Roosevelt* v. *Thurman* (7 Johns. Ch., 220), Chancellor KENT
held, that a restriction upon a devisee in fee, that he should
not dispose of the estate until his oldest son should become
of age, was void for repugnancy.   It is not necessary, in the
present case, to pronounce against the validity of all partial
restraints of alienation in the case of estates in fee ; it is
enough to say, that they cannot be sustained when they go
beyond the limits fixed by the law of perpetuities. (1 Smith's
Lead. Cas., 101.)   As the restrictions in the seventh item of
the testator's will are repugnant to the devise, and may sus-
pend the power of alienation beyond two lives, they are void;
but the devise is good, not only as to the lands given abso-
lutely in fee, but also as to the remainder in the lands devised
to the wife in trust during the minority of the two infant
children.   In respect to the personal property which was
bequeathed to the four sons by the seventh item, the absolute
ownership thereof vested in them immediately upon the testa-
tor's death, as in the case of the bequests to the daughters,
notwithstanding the postponement of the time of payment.

We have seen that all the devises and bequests created by
the will are valid, independently of the eighth item.   The
construction and effect of that item will now be considered.
It is in these words : " I will, order, devise and bequeath,
that if either of my said sons or daughters, or if both of my
said grandchildren, shall die without issue before the final
distribution of my estate, at the end of twenty-five years
after my decease as aforesaid, that the share of the party or
parties so deceased shall be shared equally among all my
other children, share and share alike, but subject to the same
restrictions, and the use and principal to be paid by my execu-
tors to them, at the same time, and in the same manner, as
the bequests hereinbefore to them directly made."

The principal effect of this item is, that in case of the death of either of the children, or of both of the grand-children of the testator named in the will, during the term, without issue, it qualifies the absolute title and estate pre-viously given to such deceased child or grandchildren by a conditional limitation in favor of all the children of the testator then surviving. A contingent remainder is thus created in the real estate given to the sons, and also in the personal property bequeathed to all the children severally, and in that given to the two grandchildren. This subse-quent limitation over is not repugnant to the prior devises and bequests, although they are in language denoting an absolute gift of the whole estate in fee, ‘and it will be sus-tained as a valid executory gift, except so far as it may have the effect to suspend the power of alienation of the real estate, or the absolute ownership of the personal property, beyond the period allowed by law. (*Norris* v. *Beyea,* 3 Kern., 273; *Tyson* v. *Blake,* 22 N. Y., 558.) It may be remarked here, however, that if the will had given, expressly or by necessary implication, to the primary devisee or legatee, power to spend or dispose of the property at his pleasure, the subsequent limitation would have been clearly hostile to the nature and intention of the gift, and therefore void. (*Attorney-General* v. *Hall,* Fitzg., 314; *Bradley* v. *Peixoto,* 3 Vesey, 324; *Norris* v. *Beyea, supra,* per DENIO, J., p. 286; *Floyd* v. *Fitcher,* 38 Barb., 409.) But no intention to confer such power is expressed, nor can it be reasonably implied from the provisions of the will.

To resume. Does the subsequent limitation above men-tioned work an illegal suspension? In respect to the home-stead farm, including the Willett's place, and the personal property given to the wife, in trust, during two minorities, by the second item of the will, it has already been seen that the suspension allowed by law was exhausted by that item, and, consequently. the suspension superadded by the eighth item is illegal, and the ulterior limitation created by it, as to such trust property, is void. But in respect to the " shares " of each of the testator's children in the other portions of the

estate, real and personal, and the sums given to the grand-children by the fifth item, the limitation over to the surviving children, on the death of the first takers, respectively, during the term, without issue, does not work an illegal suspension, and is valid.

This conclusion assumes that the term "share," as used in the eighth item, relates exclusively to the portion primarily given by the will to each of the children of the testator and the two grandchildren, and does not include the fractions of such portions which the "surviving children" will acquire on the death of the first takers respectively. That, I think, is the true construction. The term relates as well to the portion of the two grandchildren as to the portions of the children, but the grandchildren cannot take as survivors on the death of one of the testator's children, during the term, without issue.

It is insisted, however, by the counsel for the executors, that the opposite construction is the true one, to wit, that the limitation over, created by the eighth item, not only applies to the portions primarily given by the will to the testator's children and the two grandchildren, but also extends to the fractions of such portions which each survivor shall acquire on the death of the first, or any subsequent taker; so that the limitation, and the consequent suspension, may continue during the lives of the testator's children. If this construction were adopted, I do not think it would change the result as to the disposition of the estate; for the gift to the first taker, and the limitation over on his death, would still be valid, and the ulterior limitations, being void, might be separated from them, and be dropped. It is a settled rule of construction, that, if effect cannot, consistently with the rules of law, be given to the entire will, or an entire provision in a will, any part of it may be sustained which is conformable to the rules of law, and which can be separated from the residue without doing violence to the testator's general intention. (*Kane* v. *Gott*, 24 Wend., 641, 666; *Parks* v. *Parks*, 9 Paige, 107, 117; *De Kay* v. *Irving*, 5 Denio, 646; *Long* v. *Ropke*, 5 Sandf., 363, 371; *Williams* v. *Williams*,

4 Seld., 525, 539 ; *Strong* v. *Burnham*, 17 N. Y., 561, 572.) That rule is manifestly applicable to this case. It is apparent from the whole will that the testator intended to divide his estate among his children, including the children of his deceased daughter, in the proportion specified in the will. After making provision for his wife, and for the support of his two minor children during their minority, he intended that each of his daughters should have twenty-five hundred dollars, and that his sons should have his real estate, and the residue of his personal property, in equal shares. He intended that all the legatees and devisees should enter at once upon the use and enjoyment of their respective portions, except that the infants should not have the use of their money legacies till they came of age, and that the sons should not take possession of the real estate till they were all of age. That was his general, primary intention. He further conceived that, while thus vesting them presently with an absolute estate, he could prevent its alienation, and he undertook to prevent it for the period of twenty-five years after his death by creating remainders to take effect on the death of either of his children, during the term, without issue. These estates in remainder were not an essential part of his scheme of disposing of his estate. They were merely in aid of his attempt to keep his estate in the hands of his lineal descendants for a quarter of a century after his death. This is evident from the fact that he did not provide for a remainder over, in the event of either of his children dying *after* the expiration of the term ; nor in case either of them should die during the term, *leaving issue.* The ulterior limitations, being simply the instrument by which he sought to work an illegal suspension, are void, and they may be dropped without affecting the primary disposition of the estate.

Another provision of the eighth item requires a brief comment. The shares which pass to the surviving children, on the death of the first takers, are to be subject to the same "restrictions," and "the use and principal are to be paid to them, at the same time, and in the same manner, as the *bequests* thereinbefore made to them directly." By a literal

reading of this language, the restrictions imposed are those which relate to the prior *bequests.* The only restrictions relating to the bequests are these: that the payment of the principal shall be forborne twenty-five years, and that the use or interest shall be paid yearly. But these very provisions are, in specific terms, applied by the eighth item to the shares therein mentioned. It is, therefore, reasonable to suppose that the "restrictions" intended are those relating to the *devises* thereinbefore made, as the "shares" to which the restrictions are made to apply, consist of real estate, as well as personal. This point is of little practical consequence, however, as the restrictions upon the division and sale of the real estate are, as we have seen, void for repugnancy. The only effect of the provision under consideration is, that the direction of the will respecting the time of payment of the bequests, principal and interest, applies to such bequests in the hands of the remaindermen, as well as in the hands of the first takers.

The conclusion is, that the will is sustained in all respects, except that the provisions in the seventh and eighth items, restricting the division, sale and conveyance of the real estate, are void for repugnancy, and the direction in the seventh item, respecting an accumulation, is inoperative.

As that portion of the judgment of the General Term which modifies the judgment of the Special Term, and declares the second item of the will valid, is not appealed from, it stands. All the other portions of the judgment of the General Term and that of the Special Term should be reversed, and a judgment ordered in accordance with the views herein expressed.

Each party has succeeded in part; and as the suit for a construction of the will was proper, the taxed costs of each party litigating, the plaintiff included, should be paid out of the residue of the personal estate, remaining in the hands of the executors, after paying the specific legacies, or setting apart sufficient to pay them, the executors to retain their own costs, and to pay the costs of the other litigants, out of said fund, at the amounts taxed.

Judgment accordingly.