IN THE MATTER OF THE PROBATE OF THE WILL OF ANN FORBES,. DECEASED.

*Will not contestable — because it does not conform to the intentions of a testatrix as expressed shortly before its execution.*

The court will look, for the final expression of the intentions of a testatrix as to the disposition of her estate, only to the will itself.

It is not a valid ground of objection to the probate of a will that, shortly before executing her will, the testatrix expressed an intention which was not carried out in the instrument as written.

APPEAL by Edwin Forbes, a son of the testatrix, Ann Forbes, from a decree, entered in the office of the Surrogate's Court of Kings county on the 11th day of December, 1890, admitting to probate the will of Ann Forbes.

Upon the hearing in the Surrogate's Court it was shown that Ann Forbes made a will by which, after directing the payment of certain legacies, she gave the residue of her estate to her sons, in trust, to pay the income to themselves (other than the contestant) and certain grandchildren. The surrogate, at the request of the contestant, found the following facts:

1. The deceased, Anna Forbes, died on the 14th day of July, 1890, being eighty-four years old. Her health had been feeble for some time.

2. The deceased left her surviving four sons, viz., Duncan B. Forbes, Joseph C. Forbes, William H. Forbes and Edwin Forbes, and two grandchildren, viz., George Jordan and Joseph C. Jordan, the children of a deceased daughter. The said grandchildren are infants, aged, respectively, fourteen and seventeen years, and the said son Edwin is aged fifty-one years.

3. About eighteen months before she died the deceased made her last will and testament, and left it for safe keeping with her attorney who drew it.

4. In and by the said will the deceased gave or devised nothing to her said son Edwin, and by a clause of the said will, numbered "Fifth," she gave her reasons for so treating him.

5. The said deceased, four days before her death, sent to the office of the said attorney for the purpose of making a new will. The said attorney being at the time in Europe, a clerk in his office went to the residence of the deceased to receive her instructions. She informed him, substantially, that she desired to do the same by her son Edwin as by the other children, and directed him substantially to prepare a new will, the same as the old or existing will, except that in it Edwin should be made to receive a child's share and be treated in all respects in the disposition of the property as the other sons.

6. It was then the testamentary desire and intention of the deceased to so make her new will, and to so dispose of her property, and thereby make her said son Edwin share equally as aforesaid, and

she remained of that disposition and intention, and supposed she was effectuating and carrying out the same in executing and making the paper writing offered for probate as her last will and testament.

7. The said attorney's clerk having received the said instructions returned to the said attorney's office, and there had the proposed new will made in typewriting. He omitted the said "Fifth" clause of the said first will, and inserted the name of the said Edwin Forbes (the contestant herein) in two places in the said proposed new will, viz.: (1) In the subdivision thereof marked "Second," immediately after the names of the said three other sons where they first occur in the said subdivision; and (2) immediately after the said three names where they afterwards occur in the said subdivision in the following sentence: "If either or both of the Jordan children die before attaining his or their majority, the share of the one so dying shall go to my sons Duncan D., Joseph C. and William H. Forbes and Edwin Forbes in equal shares." He made no other changes in the said first will.

8. Except for the said changes, the paper offered for probate is exactly the same in words, order and form as the said first will.

9. The said clerk did forthwith on the same day bring the said new will to the deceased at her said house, and did also bring with him the said first will.

The contestant objected, before the surrogate, that the instrument was not her will; that it did not express her intentions as to the contestant.

*William J. Gaynor*, for the contestant, appellant.

*Charles J. Patterson*, for the proponent, respondent.

DYKMAN, J.:

This is an appeal from a decree of the surrogate of Kings county, admitting to probate the will of Ann Forbes, deceased. The probate of the will was resisted because the name of Edwin Forbes, a son of the deceased, was not inserted as a recipient of a portion of the income of the trust estate created by the will during its continuance, and the claim was that such omission was a mistake and that it was the intention of the testator to have such name so inserted. We can find neither principle or authority that will

justify the rejection of a will for such a cause, and the introduction of such a rule would be productive of dangerous litigation and destroy many wills.

There are many reported cases where proof has been introduced in controversies over wills of the expression of testamentary intentions which were not carried out in the instrument. Such testimony has usually been introduced upon the question of undue influence, but we find no case where such proof has been received to destroy a will on the ground of mistake alone, and we can easily perceive that such a doctrine would be fraught with danger.

Testamentary dispositions of to-day may be revolutionized to-morrow, or the next day, or the next, and the scrivener who prepares the will may or may not be informed of the change; but it is the written instrument and the solemnities surrounding its execution which manifests the intention of the testator as it is finally fixed in his mind, and his purposes must be sought for and discovered in the will, and not in external circumstances or previous declarations.

In actions for the construction of wills, or where those instruments have been called in question in other actions, statements and provisions which they contained have been held void for uncertainty and mistake, as in the case *Kalbfleisch* v. *Kalbfleisch* (67 N. Y., 360), where it was held that the numeral eight was used mistakenly. But such presumption and construction is indulged for the purpose of upholding a will, and not for its destruction. To avoid intestacy, and not to decree it.

The decree should be affirmed, with costs.

PRATT, J., concurred.

BARNARD, P. J. (dissenting):

The facts are very clear. The testratrix made a will some four years before her death. This will exhibited an estrangement between her and one of her children. This child was deprived of a share in the estate, which was about $26,000. A few days before her death she sent to her attorney, Mr. C. J. Patterson, who had drawn her will. Mr. Patterson was in Europe and one of his clerks in his office responded to the call. He saw the testatrix and was instructed to draw a will and make this disinherited child even with the others. The clerk made such changes as he supposed

would do this, and he read the will over to the testatrix and she executed it. She was about eighty-four years old and died four days thereafter. The will did not, in point of fact, carry out the intention of testatrix. The formal execution of the will, under these circumstances, should not be deemed to establish an execution by a free and capable testator who understood its contents. The changes were misleading when made, and the essential change to carry out the testatrix plan was not made at all. She relied on her lawyer, and did not have sufficient mental power, from her age and from her mortal sickness, to comprehend the will. It was executed under a mistake. If the whole will was not understood, all of it fails, even if the bequests in it were intended when given to other persons than this disinherited son. The will is an entirety, although the Surrogate's Court in New York admitted a will to probate striking out that portion executed under a mistake. (*Burger* v. *Hill,* 1 Bradford, 360.)

I think the will ought not to be admitted to probate. The former will is proven to have been destroyed and revoked thereby.

The will should be refused probate and letters of administration issued as in case of intestacy, with costs to both parties out of the estate.

Decree affirmed, with costs.